DAVID LITCHMAN *vs.* BROADWAY STORAGE COMPANY, INC.

JUNE 26, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ

STEARNS, C. J.   This is an action in assumpsit by plaintiff against defendant, a Rhode Island corporation, doing business in Providence as a warehouseman.   The declaration alleges that defendant, a warehouseman, for a valuable consideration agreed to dry plaintiff's household goods, to store and to return them to plaintiff upon demand and that defendant did not deliver said goods.

Defendant pleaded the general issue and a special plea in which it alleged that plaintiff ought not to have his action because defendant accepted the goods for storage under an agreement embodied in a non-negotiable receipt delivered to plaintiff one condition of which was that defendant should not be liable for any damage caused by fire;  that a fire occurred in its warehouse and that any damage to plaintiff's goods was the result of said fire;  that defendant exercised such care of the goods as a reasonable owner thereof would exercise;  that after the fire defendant offered to deliver said goods to the plaintiff who refused to accept them.

The case was tried by a justice of the Superior Court sitting without a jury.   Said justice found that defendant was not guilty of any negligence in the care of the goods and gave decision for defendant.

The case is in this court on plaintiff's bill of exceptions. The main exception is to the decision of the trial justice.

There is little conflict in the evidence.   On January 29, 1929, plaintiff's household furniture was damaged by water which flowed into his apartment from an upper story in the same building .   Through a friend he arranged with defendant to store his furniture.   Defendant's manager was told that the household goods were wet and he agreed to use every precaution in the care of them.   The goods were received and inspected at the warehouse on February 2.   Most of the furniture was left to dry on the floor of the warehouse; a mattress and some bedding was removed to the sun room in another building to be there dried before being placed in a compartment which had been assigned for the reception of plaintiff's goods.   Each day the bedding was inspected and

turned over to receive a full exposure to the sun. The mattress was kept in the sun room for eleven days. Defendant's manager testified that the mattress was dry so far as he was able to ascertain from a careful examination when he examined it on the afternoon of February 13th. All of the goods were then placed in a separate compartment; this compartment was of good size, had a cement floor and ceiling and metal walls and an air space of about 6 inches at the top of the walls.

The warehouse and this compartment were protected by automatic sprinklers and a watchman passed through every part of the building every three hours. At 12.30 o'clock on that night the watchman and defendant's manager went through the warehouse and passed the plaintiff's compartment, at that time there was no smoke or any evidence of fire. Three hours later the goods in this compartment were found to be on fire and before it was extinguished plaintiff's furniture was almost a total loss. Plaintiff was notified of the loss by defendant the next morning and a few hours later received a receipt for the goods which had been mailed to him the night before by defendant.

Defendant testified that this receipt was made out and mailed at once after the goods had been tagged and placed in the compartment and that this procedure was in accordance with its customary practice.

Defendant was unable to explain the cause of the fire. The only explanation given was by a captain of the fire department who testified that, in his opinion, the fire was caused by spontaneous combustion in the mattress. It is also in evidence that none of the warehousemen in Providence have any special facilities for drying wet goods. Mr. Jones, a warehouseman of many years experience, testified that defendant in the care of these goods had used proper and due care under the circumstances. There was also testimony that it was impossible to tell whether a mattress which apparently was thoroughly dry was, in fact, wet inside, without ripping the mattress into pieces.

Defendant claims an exemption from liability and relies on certain conditions in the warehouse receipt: "Conditions. The terms and conditions of this receipt, to which the depositor expressly assents by acceptance of it, are as follows:

. . . The Broadway Storage Company shall not be liable for damage by rust, moths, insects, fire, sprinkler leakage, casualty, theft, deterioration by lapse of time; nor shall it be liable for any other loss or damage except upon affirmative proof that the same occurred through its failure to exercise such care as a reasonably, careful owner of such goods would exercise."

The first question is whether plaintiff was bound by these conditions. We think he was not. Section 1, Chap. 312, G. L., 1923, provides that: Warehouse receipts may be issued by any warehouseman; they need not be in any particular form, but every such receipt must contain certain prescribed terms which include a description of the goods or the packages containing them and a statement whether the receipt is negotiable or non-negotiable. Section 3 provides that a warehouseman may insert in a receipt any other terms or conditions which (a) are not contrary to the provisions of Chapter 312; (b) or which in any wise impair his obligation to exercise that degree of care in the safe-keeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own.

The duty of the warehouseman is prescribed by Section 14, Chapter 313, as follows. "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

The only provision concerning the time of issuance of a receipt is in Chapter 315, Sec. 1, which provides that it shall be a criminal offence to issue such a receipt for goods not

actually received by, or under the actual control of, a warehouseman at the time of issuing the receipt.

In the instant case there was no agreement or understanding between the parties with respect to the issuance of a receipt by the warehouseman. The rights and duties of the parties on the delivery of the goods as a consequence were established by the statute with such other lawful conditions if any, as the parties agreed to. Defendant did not agree with plaintiff to become an insurer of his goods; defendant's agent agreed only to take proper care of the goods.

The trial justice, although at first in doubt as to the legal effect of the receipt, finally decided, and correctly, that the standard of defendant's duty and responsibility was determined by the requirements of the statute and not by the conditions in the receipt.

The evidence supports his decision that defendant was not guilty of negligence in the care of the goods. They were dried with care by the use of such facilities as defendant had. When the mattress and bedding were removed from the sun room defendant's agent had sufficient reason to believe that the mattress was dry. The danger of spontaneous combustion from any dampness inside the mattress was not such as to require defendant to use any greater care than he did. For the reasons stated the exception to the decision is overruled. The other exceptions are to certain rulings on the evidence with respect to damages and require no consideration.

The case is remitted to the Superior Court with instruction to enter judgment for the defendant.

*Higgins & Yaraus*, for plaintiff.
*Philip C. Joslin, Arthur H. Feiner*, for defendant.